1

2

3

4

5

6

7

8

9                    IN THE UNITED STATES DISTRICT COURT

10                       FOR THE DISTRICT OF OREGON

11   FIREMAN'S FUND INSURANCE        )
     COMPANY,                        )
12                                   )
                       Plaintiff,    )
13                                   )    No.  CV-09-263-HU
          v.                         )
14                                   )
     UNITED STATES FIDELITY AND      )
15   GUARANTY COMPANY; ST PAUL       )
     MARINE AND FIRE INSURANCE       )
16   COMPANY; TRAVELERS CASUALTY     )    OPINION & ORDER
     AND SURETY COMPANY; and         )
17   TRAVELERS PROPERTY CASUALTY     )
     INSURANCE COMPANY,              )
18                                   )
                       Defendants.   )
19   _____)

20

21   James M. Hillas
     DUNN CARNEY ALLEN HIGGINS & TONGUE LLP
22   851 S.W. Sixth Avenue, Suite 1500
     Portland, Oregon 97204

23   Christopher M. Caputo
     BAKER, DONELSON, BEARMAN, CALDWELL & BERKOWITZ
24   First Tennessee Bank Building
     165 Madison Avenue, Suite 2000
25   Memphis, Tennessee 38103

26       Attorneys for Plaintiff

27   / / /

28   / / /


1 - OPINION & ORDER

1    Nicholas L. Dazer
     BULLIVANT HOUSER BAILEY PC
2    300 Pioneer Tower
     888 S.W. Fifth Avenue
3    Portland, Oregon 97204-2089

4        Attorney for Defendants

5    HUBEL, Magistrate Judge:

6        Plaintiff Fireman's Fund Insurance Company brings this

7    equitable indemnity, contribution, and subrogation action against

8    defendants United States Fidelity & Guaranty Company, St. Paul

9    Marine & Fire Insurance Company, Travelers Casualty & Surety

10   Company, and Travelers Property Casualty Insurance Company

11   (collectively "Travelers" or defendants). Defendants move for

12   summary judgment on all claims. All parties have consented to

13   entry of final judgment by a Magistrate Judge in accordance with

14   Federal Rule of Civil Procedure 73 and 28 U.S.C. § 636(c). I grant

15   the motion.

16                              BACKGROUND

17       Plaintiff was the insurance company for the owner of an

18   apartment project called "Stadium Station," located at 737

19   Southwest 17th Ave, in Portland (referred to as "the Project"), for

20   the term beginning July 1, 2000. The owner of the Project was

21   Grayco, LLC. Previously, Grayco had obtained property insurance

22   coverage on the Project from defendants under the following three

23   policies:

24       (1)   Policy No. USF&G 1MP30138209200 (7/1/97 to 6/30/98);

25       (2)   Policy No. USF&G 1MP30138209201 (7/1/98 to 6/30/99);

26       (3)   Policy No. St Paul CK 08701606 (7/1/99 to 6/30/00).

27       The Project was completed in early 1998. Grayco observed

28   water intrusion following completion of the Project and enlisted

2 - OPINION & ORDER

the general contractor of the Project to correct the water intrusion problems. Grayco also hired a consultant to perform destructive testing on the Project building. In 2003, Grayco's consultant determined that water damage had been taking place "since construction." The consultant opined that the water intrusion "had deteriorated portions of the Project to the point of imminent collapse."

On November 24, 2003, Grayco reported the loss to both plaintiff and defendants. Exh. 5 to Dazer Declr. Defendants responded to the loss notice on December 3, 2003, and indicated they were starting an investigation of the claim. Exh. 6 to Dazer Declr. at pp. 1-2. Plaintiff responded to the loss notice on December 12, 2003, also indicating that it was starting an investigation of the claim. Id. at pp. 3-5.

Evidence in the record includes correspondence from defendants' accountant to a representative of Grayco's indicating that in a January 6, 2004 telephone conversation between the accountant and a representative of Grayco, the accountant understood that Grayco had instructed that any claim against USF&G was to be put on the "back burner." Exh. 10 to Dazer Declr. Later correspondence in January 2004 from defendants' Executive General Adjuster Charles Murray to Grayco's representatives acknowledged what Murray described as Grayco's wishes that USF&G and St. Paul "stand down" from investigating the cause and origin of the damages to the Project. Exh. 8 to Dazer Declr.

Grayco collected money from its general contractor and then joined its general contractor in an arbitration proceeding against others for damages arising out of construction defects and

3 - OPINION & ORDER

1 resulting water intrusion. Exh. 13 to Dazer Declr. (copy of
2 arbitration demand). A settlement conference was held in November
3 2004. Defendants declined Grayco's request that defendants attend.

4      In February 2005, plaintiff paid Grayco $589,000 to settle the
5 claim. Exh. 15 to Dazer Declr. Plaintiff obtained an assignment
6 of Grayco's rights against defendants as part of the settlement.
7 Other relevant facts and policy provisions are discussed below.

8                              STANDARDS

9      Summary judgment is appropriate if there is no genuine issue
10 of material fact and the moving party is entitled to judgment as a
11 matter of law. Fed. R. Civ. P. 56(c). The moving party bears the
12 initial responsibility of informing the court the basis of its
13 motion, and identifying those portions of "'pleadings, depositions,
14 answers to interrogatories, and admissions on file, together with
15 the affidavits, if any,' which it believes demonstrate the absence
16 of a genuine issue of material fact." Celotex Corp. v. Catrett,
17 477 U.S. 317, 323 (1986) (quoting Fed. R. Civ. P. 56(c)).

18      "If the moving party meets its initial burden of showing 'the
19 absence of a material and triable issue of fact,' 'the burden then
20 moves to the opposing party, who must present significant probative
21 evidence tending to support its claim or defense.'" Intel Corp. v.
22 Hartford Accident & Indem. Co., 952 F.2d 1551, 1558 (9th Cir. 1991)
23 (quoting Richards v. Neilsen Freight Lines, 810 F.2d 898, 902 (9th
24 Cir. 1987)). The nonmoving party must go beyond the pleadings and
25 designate facts showing an issue for trial. Celotex, 477 U.S. at
26 322-23.

27      The substantive law governing a claim determines whether a
28 fact is material. T.W. Elec. Serv. v. Pacific Elec. Contractors

4 - OPINION & ORDER

1   Ass'n, 809 F.2d 626, 630 (9th Cir. 1987).  All reasonable doubts as
2   to the existence of a genuine issue of fact must be resolved
3   against the moving party.  Matsushita Elec. Indus. Co. v. Zenith
4   Radio, 475 U.S. 574, 587 (1986).  The court should view inferences
5   drawn from the facts in the light most favorable to the nonmoving
6   party.  T.W. Elec. Serv., 809 F.2d at 630-31.

7       If the factual context makes the nonmoving party's claim as to
8   the existence of a material issue of fact implausible, that party
9   must come forward with more persuasive evidence to support his
10  claim than would otherwise be necessary.  Id.; In re Agricultural
11  Research and Tech. Group, 916 F.2d 528, 534 (9th Cir. 1990);
12  California Architectural Bldg. Prod., Inc. v. Franciscan Ceramics,
13  Inc., 818 F.2d 1466, 1468 (9th Cir. 1987).

14                            DISCUSSION

15      As indicated above, plaintiff brings three claims:  common law
16  indemnity, equitable contribution, and equitable subrogation.

17          In an action for common law indemnity, the claimant
            must allege and prove that (1) he or she has discharged
18          a legal obligation owed to a third party; (2) the
            defendant was also liable to the third party; and (3) as
19          between the claimant and the defendant, the obligation
            should be discharged by the latter.
20
21  Safeco Ins. Co. of Am. v. Russell, 170 Or. App. 636, 639, 13 P.3d
22  519, 520 (2000).

23      An "insurer's rights against its co-insurer for contribution
24  arise[] out of the equitable doctrine which holds that one who pays
25  money for the benefit of another is entitled to be reimburse[d.]"
26  Carolina Cas. Ins. Co. v. Oregon Auto. Ins. Co, 242 Or. 407, 417,
27  408 P.2d 198, 203 (1965).  "Such rights do not arise by way of
28  subrogation."  Id.; see also TIG Ins. Co. v. Travelers Ins. Co.,

5 - OPINION & ORDER

No. CV-00-1780-ST, 2003 WL 24051560, at *4 (D. Or. Mar. 24, 2003)
(Oregon law permits an insurer to seek contribution from another
insurer for its respective share of a covered loss); Guild v.
Baune, 200 Or. App. 397, 403, 115 P.3d 249, 253 (2005) (action for
contribution is normally an equitable remedy used to prevent unjust
enrichment; noting that contribution has been defined as "'the
right of a person who has discharged a common liability or burden
to recover of another, who is also liable, the portion he or she
ought to bear.'") (quoting Contribution, 18 Am. Jur. 2d § 1
(2004)).

>       Subrogation is an equitable doctrine that is based
> on a theory of restitution and unjust enrichment. . . .
> It enables a secondarily liable party who has been
> compelled to pay a debt to be made whole by collecting
> that debt from the primarily liable party who, in good
> conscience, should be required to pay. . . . In the
> insurance context, subrogation permits an insurer in
> certain instances to recover what it has paid to its
> insured by, in effect, standing in the shoes of the
> insured and pursuing a claim against the wrongdoer. . .
> .
>
>       The subrogated party acquires precisely the same
> rights as the party for whom it substitutes, and no more
> than that. . . . Thus, in the insurance context, an
> insurer may pursue a subrogation claim only if its
> insured could have pursued the underlying claim, and the
> insurer's claim is subject to all of the defenses that
> could have been asserted if the insured had pursued the
> underlying claim.

Koch v. Spann, 193 Or. App. 608, 612, 92 P.3d 146, 148 (2004)
(citations omitted).

    In support of their motion, defendants make the following
arguments: (1) plaintiff cannot establish that it discharged any
obligation that was owing by defendants at the time plaintiff paid
money to Grayco, because at that time (a) Grayco had abandoned its
claim as to defendants; and (b) Grayco had failed to file suit

6 - OPINION & ORDER

within the two-year contractual limitation period even if it had not abandoned its claim; and (2) plaintiff cannot demonstrate that Grayco sustained a loss that would have been covered by defendants' policies because there is no evidence of a covered cause of loss during defendants' policy periods, which is a predicate to plaintiff's claims for recovery.

The summary judgment record demonstrates that a genuine issue of fact exists on the question of whether Grayco abandoned its claim as to defendants.  However, I agree with defendants that the two-year contractual limitation period prevents plaintiff from obtaining relief on any of its claims.  Thus, I do not discuss the coverage argument.  Additionally, I do not discuss defendants' objection to, and request to strike, the testimony of plaintiff's expert Clemens Rossell because none of his testimony is relevant to the abandonment or contractual limitation issues.

Both of the USF&G policies and the St. Paul policy contained contractual limitation of suit provisions.  The first two policies provided as follows:

**D.  LEGAL ACTION AGAINST US**

No one may bring a legal action against us under this Coverage part unless:

**1.**  There has been full compliance with all of the terms of this Coverage Part; and

**2.**  The action is brought within 2 years after the date on which the direct physical loss or damage occurred.

Exh. 2 to Dazer Declr. at p. 10.  The third policy, issued by St. Paul, provided:

**Lawsuits Against Us**

No one can sue us to recover under this policy unless all of its terms have been lived up to.

7 - OPINION & ORDER

1

**If your policy includes property insurance.** Any lawsuit
to recover on a property claim must begin within 2 years
after the date on which the direct physical loss or
damage occurred . . .

Exh. 4 to Dazer Declr. at p. 6.

Both of these provisions are consistent with Oregon Revised

Statute § (O.R.S.) O.R.S. 742.240, which provides that

[a] fire insurance policy shall contain a provision as
follows:

No suit or action on this policy for the recovery of any
claim shall be sustainable in any court of law or equity
unless all the requirements of this policy shall have
been complied with, and unless commenced within 24 months
next after inception of the loss.

O.R.S. 742.240. Oregon courts have applied this provision outside
of the fire insurance context. See Herman v. Valley Ins. Co., 145
Or. App. 124, 126 n.1, 928 P.2d 985, 987 n.1 (1996) (in case
involving a homeowner's insurance policy, court noted that "[b]y
its terms, ORS 742.240 applies only to fire insurance policies. As
construed, it applies to homeowner's insurance policies as well.")
(citing Hatley v. Truck Ins. Exchange, 261 Or. 606, 494 P.2d 426,
495 P.2d 1196 (1972) (property insurance policy with vandalism
endorsement required by O.R.S. 742.240 to contain suit limitation
provision)). Additionally, the Oregon Supreme Court has held that
the suit limitation provision in O.R.S. 742.240 is to be strictly
interpreted and is not subject to a discovery rule. Moore v.
Mutual of Enumclaw Ins. Co., 317 Or. 235, 244-50, 855 P.2d 626,
632-35 (1993).

According to the plain language of these provisions, any suit
by Grayco under the policies and against defendants would have been
commenced by July 2002. Grayco originally tendered its claim to
defendants in November 2003, alleging damages arising out of water

8 - OPINION & ORDER

1  intrusion beginning in early 1998.  The November 2003 tender was
2  more than three years after the most recent Travelers policy ended
3  in June 2000, and more than one year after any suit by Grayco
4  against Travelers was required to have commenced.

5       Defendants argue that as a matter of law, the Travelers
6  policies that are the basis for plaintiff's claims are subject to
7  the two-year contractual suit limitation provisions set forth in
8  the policies pursuant to O.R.S. 742.240.  At the time plaintiff
9  made its settlement payment to Grayco, in February 2005, defendants
10  contend that they had no legally enforceable obligation toward
11  Grayco on which plaintiff could predicate any of its claims.
12  Because Grayco would have had no claim against defendants when
13  plaintiff settled Grayco's claim, there is no equitable, or other,
14  basis under which plaintiff may claim any reimbursement from
15  defendants.  I agree with defendants.

16       Each of plaintiff's claims presumes an underlying obligation
17  by defendants to Grayco.  Most obvious is the subrogation claim in
18  which the insurer (plaintiff) stands in the shoes of the insured
19  (Grayco) to recover what the insurer paid the insured.  The insurer
20  obtains only the rights possessed by the insured.  Here, at the
21  time Grayco tendered its claim to defendants in November 2003, any
22  suit Grayco could have brought under its policies with defendants
23  was already untimely.

24       The indemnity and contribution claims suffer the same fate.
25  In the contribution claim, plaintiff's payment must be found to
26  have been for the benefit of defendants.  But, if at the time
27  plaintiff made that payment, defendants could not have been
28  obligated to Grayco for any claim given the suit limitation

9 - OPINION & ORDER

provision, as a matter of law plaintiff was not making a payment
for defendants' benefit.    The indemnity claim requires that
plaintiff prove that it discharged a legal obligation owed to
Grayco which was also owed by defendants.    As explained, at the
time plaintiff made the payment to Grayco, defendants had no legal
obligation to Grayco.

Although not binding, the case cited by defendants is on point
and offers a thorough explanation of why defendants prevail here.
In Great American West, Inc. v. Safeco Insurance Company of
America, 226 Cal App. 3d 1145, 277 Cal. Rptr. 349 (1991),
plaintiff, a homeowners' insurance carrier, sought contribution
and/or indemnity from defendant, the previous homeowners' carrier,
after plaintiff paid a claim to the insureds for subsidence damage.
The defendant was the insurer for a period of years before the
plaintiff became the insurer.    During the period when the defendant
was the insurer, the insured noticed cracks in the driveway and an
entry sidewalk to his home.    Later, when the plaintiff was the
insurer, the increased damage to the home's structure and
foundation triggered a claim by the insured against the plaintiff.
The plaintiff settled the claim with the insured and then brought
the action against the defendant.

The trial court granted summary judgment to the defendant on
the basis that the action was actually one for subrogation, despite
the express claims for contribution and indemnity, and because the
insured had failed to make a claim within one year of the damage as
required by the defendant's policy.    226 Cal App. 3d at 1148, 277
Cal. Rptr. at 350-51.    The appellate court concluded it need not
resolve whether the nature of the claim was one of subrogation,

10 - OPINION & ORDER

indemnity, or contribution because the policy's contractual limitation period rendered the plaintiff's claim untimely regardless of the theory of recovery. Id. at 1149, 277 Cal. Rptr. at 351.

The court first rejected the plaintiff's argument that plaintiff's only responsibility was to file suit within two years of paying the insured's claim. The court explained that this "argument improperly seeks to strip Great American's indemnity claim from the Safeco insurance policy on which it is based." Id. at 1150, 277 Cal Rptr. at 352. Noting the time limitation in the defendant's insurance policy, and further noting that the defendant's only responsibility to its insured is limited to the terms of the contractual insurance policy, the court explained that where an insurer like the plaintiff "seeks indemnity based on another party's (Safeco's) contractual responsibilities, provisions of the contract imposing time constraints - like any other provision of the contract - cannot be ignored. To do so would be to impose liability no longer based on the contract." Id,

The court then recognized, however, that while "contractual time limitations cannot be ignored by a party seeking indemnity," it was unclear how such limits related to an indemnity action brought by a third party insurer. Id. at 1151, 277 Cal. Rptr. at 352. The court noted that a simple rule would be to hold that any action relying on the insurance policy must be brought within the suit limitation period provided for in most policies. Id. at 1151, 277 Cal Rptr. at 353. But, the court further noted, such a rule "eliminates any distinction between the direct and indirect action." Id.

11 - OPINION & ORDER

1    The court, citing to an insurance law treatise, suggested that
2   while subrogation claims are controlled by the statute of
3   limitations that would have been applicable had the insured brought
4   suit in his or her own behalf, and are deemed to run starting from
5   the date of the insured's loss, that is not the case with an
6   indemnity claim which is an independent cause of action where the
7   statute of limitations "'does not begin to run until the insurance
8   company has provided policy benefits to the insured.'"    Id. at
9   1152, 277 Cal. Rptr. at 353 (quoting Allan D. Windt, Insurance
10  Claims and Disputes 554 (2d ed. 1988)).

11    Continuing to cite to Windt, the court noted that claims of
12  contribution and indemnity do not accrue until the time of payment,
13  and the statute of limitations does not begin to run until that
14  time.   Id.  But, while generally an insurer is not barred from
15  pursuing a contribution or indemnity reimbursement claim against
16  another insurer "'on the grounds that the statute of limitations
17  had run as to the insured's cause of action against such other
18  insurers[,]'" the insurer seeking such reimbursement must still
19  show that "'the insured had a viable cause of action against such
20  insurers at the time the contribution or indemnity claim came into
21  existence.'"   Id. (quoting Windt at p. 562).  Thus, the "critical
22  question" is

> "not whether the limitations period had run prior to
> institution of the lawsuit, but whether it had run prior
> to payment of the insured's claim. If the limitations
> period had run by the time of the payment, the paying
> insurer would not have paid a debt that was concurrently
> owed by the other insurer.  By virtue of the expiration
> of the limitations period, the other insurer's policy
> would no longer have provided any coverage.  In that
> event, therefore, the paying insurer's contribution claim
> would never have come into existence."

1    Id. (quoting Windt at p. 563).

2         The court then explained that assuming the homeowner's loss

3    was "first manifest" on the last day of the Safeco policy period in

4    1981, the plaintiff would possess an enforceable claim for

5    contribution or indemnity under Windt's analysis only if, at the

6    time it paid the claim, Safeco remained contractually liable to the

7    insured homeowner.  Id. at 1152-53, 277 Cal. Rptr. at 353.  The

8    facts, however, showed that the plaintiff had paid the claim in

9    June 1986, almost four years after the one-year contractual

10   limitations period on the defendant's obligations, expired.  Id.

11        The court concluded by stating that it was

12        unnecessary for us to decide whether an action for
          indemnity or contribution by a third party against an
13        insurer must be filed within the one-year limitations
          period provided for in the contract, or whether it is
14        sufficient if the one year had not yet expired at the
          time the third party made payment to the insured and the
15        indemnity or contribution rights arose.  Under either
          theory here, Great American's action against Safeco was
16        too late.

17   Id. at 1153, 277 Cal. Rptr. at 353-54.

18        The same result occurs here.  In the subrogation claim,

19   plaintiff's claim is barred because, stepping into Grayco's shoes,

20   suit was not filed on or before July 1, 2002, the end of the two-

21   year contractual limitations period in the third policy.  And, for

22   the indemnity or contribution claims to be viable, defendants must

23   have remained contractually liable to Grayco at the time plaintiff

24   paid Grayco in February 2005.  Because defendants no longer had any

25   contractual liability to Grayco at that time, plaintiff's indemnity

26   and contribution claims are untimely.

27   / / /

28   / / /

13 - OPINION & ORDER

CONCLUSION

Defendants' motion for summary judgment (#27) is granted.

IT IS SO ORDERED.

Dated this __17th__ day of _May_____, 2010.


_/s/ Dennis James Hubel_____
_____
Dennis James Hubel
United States Magistrate Judge

14 - OPINION & ORDER